**HEARST v. HEARST.**

No. 33182.

United States District Court
N. D. California, S. D.
Aug. 4, 1954.

Phillip Barnett and Rodney H. Robertson, San Francisco, Cal., for plaintiff.

McEnerney & Jacobs, Garret McEnerney, II, and Robert Rankin Barton, San Francisco, Cal., for garnishee.

HAMLIN, District Judge.

This is an action by Sally Hearst against her former husband, George Hearst, to recover $12,000 alleged to be due under a property settlement. As yet, no service has been made on the defendant. A writ of attachment attaching "all moneys, interest, goods, credits, effects, debts due or owing, and any other personal property of, or belonging to, the within-named defendant George Hearst in and to the Estate of William Randolph Hearst," was issued (not to secure jurisdiction over the defendant, but to protect any judgment that might later be obtained). Petitioner, executor of the estate of William Randolph Hearst, moves to quash the writ of attachment.

757

Plaintiff, Sally Hearst, moves to strike the motion to quash.

The will of William Randolph Hearst sets up a trust in which the trustees are, under Subdivision Second (b),

"(1) To invest and reinvest the trust estate as in this my Will provided and collect and receive the income therefrom and after paying all charges and expenses to divide the net income thereof into equal shares, to set aside one such share for each of my sons, William Randolph Hearst, Jr., John Randolph Hearst, Randolph Apperson Hearst, David Whitmire Hearst, respectively, and one such share for my son George Hearst and his issue; to pay over to my said sons William Randolph Hearst, Jr., John Randolph Hearst, Randolph Apperson Hearst and David Whitmire Hearst, the shares so set aside for them respectively, in quarterly or more frequent installments; to pay over to my son George Hearst, in quarterly or more frequent installments, so much of the share so set aside for him and his issue as to my said Trustees in their discretion shall seem advisable, and to pay over the balance of such share in quarterly or more frequent installments to his issue, share and share alike, *per stirpes* and not *per capita*, or, if no issue of my said son George Hearst be then living, to my said son George Hearst."

The will also provides under Subdivision Second (b):

"(8) The interest of the several beneficiaries under this Subdivision (b) shall not be transferable or assignable, either by operation of law or otherwise, or be otherwise subject to anticipation or be subject in any manner or to any extent to the claims of creditors of any of said beneficiaries."

█ The effect of this language is to set up a spendthrift trust for the defendant (the other sons are not involved in this litigation, and of course nothing said here is applicable to them.)

In Alvis v. Bank of America National Trust & Savings Ass'n, 1950, 95 Cal.App. 2d 118, 212 P.2d 608, 610, the language of the trust was similar to the above language. There, the trust provided for the payment of the income to the beneficiary and prohibited the beneficiary from selling, assigning, pledging, encumbering, or anticipating his interest and, further, that the trust was not subject to the claims of creditors, nor liable to attachment, garnishment, execution or any other process of law. The Court said that "In considering this trust for the purpose of determining the appeal, it has been assumed that it is a spendthrift trust." The case was then decided on that basis. In the case of San Diego Trust & Savings Bank v. Heustis, 1932, 121 Cal.App. 675, 10 P.2d 158, the trust did not specifically use the words "spendthrift trust" or imply that the beneficiary was incapable of handling money, as was done in the trust involved in Canfield v. Security First National Bank of Los Angeles, 1939, 13 Cal.2d 1, 87 P.2d 830, but used words similar in import to those used in setting up the Hearst trust. The trustee was to pay to the beneficiary a certain sum out of income, and corpus if needed, each month. The beneficiary was prohibited from selling, transferring, pledging, mortgaging, alienating, or anticipating his interest in any way. It was also provided that the interest of the beneficiary was not to be subject to the claims of creditors; that the money was to be paid personally to the beneficiary; and that his rights should not be liable to any process of law or court. The Hearst will provides "or be subject *in any manner or to any extent* to the claims of creditors of said beneficiaries." (Emphasis added.) This is sufficient to show the intent of the testator. "A donor has the right to give his property to another upon any conditions which he sees fit to impose, and * * * inasmuch as such a gift takes nothing from the prior or subsequent creditors of the beneficiary to which they previously had the right to look for payment, they cannot complain that the donor has provided that the property or income shall go or be paid personally to the beneficiary and shall not be subject to the claims of creditors." San Diego Trust & Savings Bank v. Heustis, supra, at page 162 of 10 P.2d.

The law of California is clear that a spendthrift trust can only be reached by a judgment creditor, and then only to the extent that there is some portion of the trust income that is not needed for the support and education of the beneficiary. Canfield v. Security First National Bank, supra; Smith v. Smith, 1942, 51 Cal.App.2d 29, 124 P.2d 117; Spring Street Corp. v. Walsh, Cal. App.1940, 101 P.2d 783; Jenks v. Title Guarantee & Trust Co., 1915, 170 App. Div. 830, 156 N.Y.S. 478; Butler v. Baudouine, 1903, 84 App.Div. 215, 82 N.Y.S. 773, affirmed 177 N.Y. 530, 69 N.E. 1121; Judis v. Martin, 1926, 218 App.Div. 402, 218 N.Y.S. 423. On the applicability of the New York cases to California law, see the Canfield case, supra, at page 836 et seq. of 87 P.2d.

Admittedly, Sally Hearst is not a judgment creditor and it therefore follows that she cannot attach this spendthrift trust. She contends, however, that the executor-garnishee has no standing to object to the attachment, since he is a stranger to this action between Sally and George Hearst. (No trustee has yet been named to administer the trust. However, the will provides that until a trustee is appointed, the executors shall perform the functions of a trustee.) No California case directly in point has been found, but in other jurisdictions trustees have been permitted to object to attachments in similar cases. Bauernschmidt v. Safe Deposit & Trust Co. of Baltimore, 1939, 176 Md. 351, 4 A.2d 712; Chinnis v. Cobb, 1936, 210 N.C. 104, 185 S.E. 638, 642. In the Chinnis case, the Court said:

"But it is not only the right, but the duty of a trustee to protect and defend the title to the trust estate. He is not only a proper party, but a necessary party. He holds the property under the will as trustee for the purposes expressed in the devise.

* * * In order to carry out the purposes of the trust and perform the duties imposed upon him, it is incumbent on him to preserve and protect the trust property, and for that purpose may appear and defend the action for all purposes in this court as well as the court below. 26 R.C.L. 1281; 2 Beach on Trusts, § 501; 1 Perry on Trusts, § 328; 65 C.J. 694."

In the Chinnis case, the creditor sought to attach defendant's interest in a spendthrift trust. Defendant did not appear, but the trustee moved to vacate the attachment.

It appears to the Court that the language in the Chinnis case is persuasive. The executor here is more than a mere debtor or bailee holding funds for the defendant. As trustee, the executor has the duty to protect the trust estate. An invalid writ levied on exempt property would seriously interfere with the administration of the estate.

It is therefore ordered that plaintiff's motion to strike the motion to quash is denied. It is further ordered that the executor's motion to quash the writ of attachment is granted.