**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| TODD A. FREALY, Attorney, Chapter 7 Trustee of Estate of Rick Reynolds, *Appellant*, <br><br> v. <br><br> RICK H. REYNOLDS; JOHN M. CARMACK, Co-Trustee of the Reynolds Family Trust and Co-Trustee of The Reynolds Family Trust - Survivor's Trust, as amended; JOHN MORRIS, Co-Trustee of the Reynolds Family Trust and Co-Trustee of The Reynolds Family Trust - Survivor's Trust, as amended, *Appellees*. | No. 12-60068 <br><br> BAP No. 11-1433 <br><br><br> ORDER CERTIFYING A QUESTION TO THE CALIFORNIA SUPREME COURT |

Filed March 9, 2015

Before: Alex Kozinski and Susan P. Graber, Circuit Judges, and Charles R. Breyer, Senior District Judge.[*]

Per Curiam Order

---

[*] The Honorable Charles R. Breyer, Senior District Judge for the U.S. District Court for the Northern District of California, sitting by designation.

## SUMMARY[**]

### Bankruptcy

The panel certified to the California Supreme Court the following question:

> Does section 15306.5 of the California Probate Code impose an absolute cap of 25 percent on a bankruptcy estate's access to a beneficiary's interest in a spendthrift trust that consists entirely of payments from principal, or may the bankruptcy estate reach more than 25 percent under other sections of the Probate Code?

### COUNSEL

Jesse S. Finlayson (argued), Finlayson Toffer Roosevelt & Lilly LLP, Irvine, California, for Appellant.

David W. Meadows (argued), Law Offices of David W. Meadows, Los Angeles, California, for Appellees.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**ORDER**

PER CURIAM:

   This appeal requires us to determine the extent to which a bankruptcy estate may reach a beneficiary's interest in a spendthrift trust under the California Probate Code.  The beneficiary claims that California Probate Code section 15306.5 caps the bankruptcy estate's access at 25 percent of his trust interest, which consists entirely of payments from principal.  The bankruptcy trustee, on the other hand, seeks to reach more than 25 percent of the beneficiary's interest under Probate Code sections 15301(b) and 15307, which it reads as not subject to the section 15306.5 cap.

   We find no controlling precedent in the decisions of the California Supreme Court or Courts of Appeal.  *See* Cal. R. Ct.  8.548(a)(2) (permitting certification where there is "no controlling precedent" from the state court); *Sullivan* v. *Oracle Corp.*, 557 F.3d 979, 983 (9th Cir. 2009) (order) (looking to decisions of California appellate courts).  Nor has our court considered the interplay between section 15306.5 and other Probate Code sections governing creditors' access to spendthrift trusts.  We held in *Neuton* v. *Danning* (*In re Neuton*), 922 F.2d 1379, 1383 (9th Cir. 1990), that section 15306.5 allows a bankruptcy estate to reach 25 percent of a spendthrift trust.   But, unlike in the present case, the beneficiary in *Neuton* had argued that *all* of his interest in the spendthrift trust was protected from the bankruptcy estate, while the bankruptcy estate claimed only 25 percent under section 15306.5.   *Id.*   We therefore had no occasion to examine whether a bankruptcy estate could access *more* than 25 percent under other Probate Code sections.

A substantial sum of money hangs in the balance, as the beneficiary stands to lose—and the bankruptcy estate stands to gain—the entirety of his trust interest. Their fate, and the fates of future beneficiaries and their creditors, hinges on the interpretation of opaque sections of the Probate Code. Because the resolution of this appeal could transform the terrain of California trust law, we respectfully request that the California Supreme Court exercise its discretion to accept and decide the certified question below.

## I. Question Certified

Pursuant to Rule 8.548 of the California Rules of Court, we request that the California Supreme Court answer the following question:

> Does section 15306.5 of the California Probate Code impose an absolute cap of 25 percent on a bankruptcy estate's access to a beneficiary's interest in a spendthrift trust that consists entirely of payments from principal, or may the bankruptcy estate reach more than 25 percent under other sections of the Probate Code?

We understand that the Court may reformulate our question, and we agree to accept and follow the Court's decision.

## II. Background

### A. Applicable California Statutes

The California Probate Code recognizes the validity of spendthrift provisions that restrict transfer of a beneficiary's

interest in income and principal, so long as that interest hasn't yet been paid to the beneficiary. *See* Cal. Prob. Code §§ 15300, 15301(a). Section 15301(a) permits the restraint against transfer of trust principal, subject to certain exceptions set forth in sections 15301(b) and 15304–07:

> Except as provided in subdivision (b) and in Sections 15304 to 15307, inclusive, if the trust instrument provides that a beneficiary's interest in principal is not subject to voluntary or involuntary transfer, the beneficiary's interest in principal may not be transferred and is not subject to enforcement of a money judgment until paid to the beneficiary.

Cal. Prob. Code § 15301(a).

One of these exceptions, section 15306.5(a), allows general creditors to satisfy money judgments out of payments to which the beneficiary is entitled. The section provides:

> Notwithstanding a restraint on transfer of the beneficiary's interest in the trust under Section 15300 or 15301, and subject to the limitations of this section, upon a judgment creditor's petition under Section 709.010 of the Code of Civil Procedure, the court may make an order directing the trustee to satisfy all or part of the judgment out of the payments to which the beneficiary is entitled under the trust instrument or that the trustee, in the exercise of the trustee's discretion, has determined or determines in the future to pay to the beneficiary.

Cal. Prob. Code § 15306.5(a).  Creditors, upon petition to the court, may thus reach payments to which the beneficiary is entitled subject to "the limitations of this section."  *Id.*

One of the limitations states as follows:

> An order under this section may not require that the trustee pay in satisfaction of the judgment an amount exceeding 25 percent of the payment that otherwise would be made to, or for the benefit of, the beneficiary.

Cal. Prob. Code § 15306.5(b).  Along the same lines, section 15306.5(f) specifies that "the aggregate of all orders for satisfaction of money judgments against the beneficiary's interest in the trust may not exceed 25 percent of the payment that otherwise would be made to, or for the benefit of, the beneficiary."  Cal. Prob. Code § 15306.5(f).  Section 15306.5(c) further restricts creditors' access, stating that "[a]n order under this section may not require that the trustee pay in satisfaction of the judgment any amount that the court determines is necessary for the support of the beneficiary and all the persons the beneficiary is required to support."  Cal. Prob. Code § 15306.5(c).

Section 15301(b) contains another exception to the general rule against transfer of a spendthrift trust beneficiary's interest in principal:

> After an amount of principal has become due and payable to the beneficiary under the trust instrument, upon petition to the court under Section 709.010 of the Code of Civil Procedure by a judgment creditor, the court

may make an order directing the trustee to satisfy the money judgment out of that principal amount.

Cal. Prob. Code § 15301(b).

And section 15307, titled "Income in excess of amount for education and support; application to creditors' claim," states:

> Notwithstanding a restraint on transfer of a beneficiary's interest in the trust under Section 15300 or 15301, any amount to which the beneficiary is entitled under the trust instrument or that the trustee, in the exercise of the trustee's discretion, has determined to pay to the beneficiary in excess of the amount that is or will be necessary for the education and support of the beneficiary may be applied to the satisfaction of a money judgment against the beneficiary. Upon the judgment creditor's petition under Section 709.010 of the Code of Civil Procedure, the court may make an order directing the trustee to satisfy all or part of the judgment out of the beneficiary's interest in the trust.

Cal. Prob. Code § 15307.

Unlike sections 15306.5, 15301(b) and 15307, which apply to general creditors, the remaining exceptions pertain to either preferred creditors or the unique situation in which the settlor of the trust is also a beneficiary. *See* Cal. Prob. Code § 15304 (invalidating the restraint against transfer

where the beneficiary is also the settlor); *id.* § 15305 (court may order the trust to satisfy a money judgment for support of the beneficiary's spouse, former spouse or minor child); *id.* § 15305.5 (same, where there is a judgment against the beneficiary awarding restitution for the commission of a felony); *id.* § 15306 (same, where the beneficiary is liable for reimbursement to the state of California for public support furnished to him or his spouse or minor child).

## B.  Facts Of Our Case

Appellee Rick Reynolds is a beneficiary of the Reynolds Family Trust, which contains the following spendthrift provision:  "No interest in the income or principal of any trust created under this instrument shall be voluntarily or involuntarily anticipated, assigned, encumbered, or subjected to [a] creditor's claim or legal process before actual receipt by the beneficiary."  The trust is composed of three sub-trusts—the Bypass Trust, the Marital Trust and the Survivor's Trust.  Thirty days after his father's death in 2009, Reynolds became entitled to $250,000 from the Bypass Trust, $100,000 a year for ten years from the Survivor's Trust and one-third of the residue of the Survivor's Trust thereafter.  All, or substantially all, of these distributions will be made from trust principal, as the trust assets are not expected to generate income.

The day after his father died, Reynolds filed a voluntary Chapter 7 bankruptcy petition.  The trust trustee subsequently filed an adversary proceeding asking the bankruptcy court to determine what interest, if any, the bankruptcy estate has. Reynolds filed a motion for partial summary judgment, arguing that section 15306.5 limits the bankruptcy estate to 25 percent of his interest in the spendthrift trust.   The

bankruptcy trustee countered that the estate is entitled to more than 25 percent because section 15301(b) gives creditors unrestricted access to distributions of principal "due and payable," and all of Reynolds's distributions from the trust were expected to be made from principal. Alternatively, the bankruptcy trustee argued that section 15307 allows the bankruptcy estate to reach any amount of Reynolds's trust interest not deemed necessary for his education and support. The bankruptcy trustee viewed sections 15306.5, 15301(b) and 15307 as independent routes that a creditor could use in gaining access to a beneficiary's trust interest.

The bankruptcy court ruled in favor of Reynolds and held that section 15306.5 establishes an "absolute maximum cap on what is recoverable by a judgment creditor at 25 percent." Although it acknowledged that "[t]here may be an exception to [the 25 percent cap] under 15301(b)," the court "cho[]se not to follow that interpretation." The bankruptcy court also rejected the argument that its reading rendered section 15307 superfluous, explaining that, under section 15307, "[a creditor doesn't] even necessarily get all of [the 25 percent] if [the trust trustee] can show that [that amount] is necessary for support."

A divided Ninth Circuit Bankruptcy Appellate Panel affirmed the bankruptcy court, though the majority took a different approach. The BAP read section 15301(b) as merely setting forth the procedure that a creditor must follow to satisfy a claim from the principal of a spendthrift trust once such principal is payable but not yet distributed to the beneficiary. It refused to read section 15301(b) as allowing a creditor to reach the entirety of principal due and payable, reasoning that doing so would "effectively eviscerate[] the spendthrift protection recognized by 15301(a)." It also

pointed to the exceptions contained in sections 15304–07 as reflecting a "policy recognition that certain creditors should have greater rights to a beneficiary's interest in order to satisfy their claims," and noted that it would run counter to this policy to read section 15301(b) as allowing *any* creditor to similarly satisfy claims from trust principal.

In considering section 15307, the BAP reasoned that, if sections 15307 and 15306.5 were separate avenues for collection, "15306.5 would make no sense:  Why would a judgment creditor ever choose to satisfy its claim under 15306.5, which is limited not just by the 25% cap on the beneficiary's interest but by the needs of the debtor *and* his or her dependents, when 15307 is only limited by the debtor's *own* educational and support needs?"  The BAP concluded that section 15307 doesn't apply to this case because the more plausible reading, and the one most aligned with the legislative intent, is that it only limits a creditor's access to income, and not principal.

The dissent, by contrast, "d[id] not believe the California legislature intended that a debtor, without exception, should have access to potentially large distributions of cash from a trust not needed for his support or education in preference to the legitimate claims of his creditors."  It viewed sections 15301(b) and 15307 as playing a "critical role in protecting creditors' rights" by allowing "creditors, in some cases, to reach some, or perhaps even all, . . . distributions" for which beneficiaries have "no legitimate need."

## III.     Explanation of Certification

The bankruptcy judge in this case was correct in observing that "[t]he Probate Code of the state of California

is anything other than crystal clear." It's no surprise that both the bankruptcy court and the BAP struggled to make sense of the statutory scheme, with little to rely on but their own conceptions of the proper balance between the rights of a spendthrift trust beneficiary and those of his creditors.

As reflected in the assorted theories advanced by the debtor, the bankruptcy trustee, the bankruptcy court and the BAP majority and dissent, there is no obvious way to harmonize section 15306.5 with sections 15301(b) and 15307. Below, we identify aspects of these sections that have proved challenging for us to decipher, and for which we seek authoritative guidance.

**1.** Recall that section 15301(a) permits the restraint against transfer of trust principal, subject to exceptions "provided in subdivision (b) and in Sections 15304 to 15307." Cal. Prob. Code § 15301(b). Section 15306.5 is one of these exceptions, but it's not clear from its text whether the 25 percent cap on a creditor's access to "payment[s] that otherwise would be made to, or for the benefit of, the beneficiary" also applies to orders under other sections of the Probate Code. Cal. Prob. Code § 15306.5(b).

Section 15306.5(b) suggests, for example, that the 25 percent cap is limited to orders issued under section 15306.5, as it states that "[a]n order *under this section* may not require that the trustee pay in satisfaction of the judgment an amount exceeding 25 percent of the payment that otherwise would be made to, or for the benefit of, the beneficiary." Cal. Prob. Code § 15306.5(b) (emphasis added). But the "under this section" phrasing is missing from subsection (f), which provides that "the aggregate of all orders for satisfaction of money judgments against the beneficiary's interest in the

trust may not exceed 25 percent of the payment that otherwise would be made to, or for the benefit of, the beneficiary." Cal. Prob. Code § 15306.5(f). Nor do the Law Revision Commission's comments elaborate when explaining that "[s]ubdivision (f) limits the aggregate amount of the beneficiary's interest in one trust that is subject to enforcement where several creditors have obtained orders." Cal. Prob. Code § 15306.5 Law Revision Commission comments.

**2.** A broader ambiguity exists with respect to section 15301(b). Its plain wording does not specify a limit on the amount of principal "due and payable" that a creditor may reach. It simply states that, "[a]fter an amount of principal has become due and payable to the beneficiary . . . , the court may make an order directing the trustee to satisfy the money judgment *out of that principal amount*." Cal. Prob. Code § 15301(b) (emphasis added). Reading section 15301(b) literally, without any limitations on creditors' access, raises a host of difficult questions.

At the outset, section 15301(b) specifies that creditors may access those principal amounts held within the trust only after they become "due and payable" to the beneficiary. Cal. Prob. Code § 15301(b). But nowhere in the Probate Code is there a definition of "due and payable." One interpretation of "due and payable" is that it encompasses all disbursements of principal owed to the beneficiary, regardless of the timing of disbursement. Section 15301(b) would therefore give creditors immediate access to all of a beneficiary's trust principal. Another theory is that an amount becomes "due and payable" at the time the beneficiary is owed a disbursement—that is, when the only remaining step is for the trust to write a check or otherwise effect the transfer of funds

to the beneficiary. So construed, in Reynolds's case, where he is entitled to annual payments of principal continuing over the next decade, a creditor would be unable to use section 15301(b) to reach the totality of his trust interest at one time; instead, the creditor would have to wait until certain amounts were ready for disbursement to petition the court for access.

Under any definition of "due and payable," a literal reading of section 15301(b) could give a judgment creditor access to *all* trust principal, notwithstanding the limitations set forth in section 15306.5 or section 15307. And perhaps that makes sense—after all, it is, in essence, what already happens: a spendthrift provision protects the beneficiary's income and principal interests only so "long as the income or principal is properly held" in the trust. *Chatard* v. *Oveross*, 101 Cal. Rptr. 3d 883, 889 (Ct. App. 2009). After the amount is paid to the beneficiary, creditors may reach it. *Kelly* v. *Kelly*, 79 P.2d 1059, 1063 (Cal. 1938); *see also* Cal. Prob. Code §§ 15300, 15301(a).

That reading, when viewed in light of the absence of a similar provision in section 15300, also renders the Probate Code's treatment of principal different from that of income: distributions of income are protected by the spendthrift provision until they reach the beneficiary, while distributions of principal become fair game as soon as they are "due and payable." And that distinction also may make sense— distributions of principal, for example, are more likely to be associated with the winding-down of a trust, as the beneficiary transitions to self-sufficiency. Distributions of income, by contrast, are intended to keep the beneficiary going from year to year and therefore may be designed to ensure that the beneficiary's most immediate needs are met.

When considered in context, however, reading section 15301(b) as an independent means of accessing all principal as it becomes due and payable creates some puzzling consequences. For example, what purpose would section 15306.5 serve? On one hand, section 15306.5 uses the all-encompassing word "payments," so it could also be read as applying to principal due and payable. *See* Cal. Prob. Code § 15306.5(a), (b), (f). Why, then, would the California legislature craft a 25 percent cap and emphasize that it applies in the aggregate, if creditors could bypass this protection by using section 15301(b) to access the entirety of principal due and payable? It's also unclear, under that reading, why the legislature would specify that creditors may not access amounts "necessary for the support of the beneficiary and all the persons the beneficiary is required to support," *see* Cal. Prob. Code § 15306.5(c), if creditors could turn to section 15301(b) to potentially drain the entirety of a beneficiary's trust interest, when that interest consists of principal due and payable. On the other hand, section 15306.5 refers to *all* payments, *current and future*, of principal and income. Thus, perhaps section 15306.5 exists not as a cap on payments of principal otherwise accessible through section 15301(b), but instead as a limit on a creditor's ability to obtain a standing, general percentage share of the beneficiary's trust payments, current and future.

Similarly, if section 15301(b) permits general creditors to access all principal due and payable, what becomes of the exceptions in sections 15304–07 giving access to preferred creditors? Could the bankruptcy trustee or any unsecured creditor deplete the entirety of the trust interest when it consists of principal due and payable, leaving none for the preferred creditors contemplated in sections 15305, 15305.5 and 15306? Section 15301(b) states that "*[a]fter* an amount

of principal has become due and payable . . . , upon petition to the court . . . , the court may make an order directing the trustee to satisfy the money judgment out of that principal amount." Cal. Prob. Code § 15301(b) (emphasis added). By contrast, sections 15305, 15305.5 and 15306 don't contain any language requiring preferred creditors to wait until a certain time to petition the court for an order. Thus, if the sequence in which a court order is issued determines the timing of payments—an assumption lacking clear support from the Probate Code—preferred creditors may retain priority over a section 15301(b) creditor in accessing principal due and payable.

**3.** The final ambiguity arises under section 15307, which can be read as applying either to both income and principal, or only to income. Its title, "Income in excess of amount for education and support; application to creditors' claim," suggests the latter. The legislative history also supports this interpretation. *See, e.g.*, Cal. Prob. Code § 15307 Law Revision Commission comments (explaining that "[s]ection 15307 permits an ordinary creditor to reach income under limited circumstances" and further discussing "the creditor's attempt to reach the excess income under this section"). In addition, California Civil Code section 859, which was repealed and replaced by California Probate Code section 15307, exclusively governed income. *See United Cal. Bank* v. *Lawrence* (*In re Estate of Lawrence*), 72 Cal. Rptr. 851, 854–55 (Ct. App. 1968). However, the text of section 15307 does not mention income and instead refers generally to "any amount to which the beneficiary is entitled." Cal. Prob. Code § 15307. Also, the first sentence begins, "Notwithstanding a restraint on transfer of a beneficiary's interest in the trust under Section 15300 [governing income] or 15301

[governing principal],” which supports applying section 15307 to both income and principal. *Id.*

If section 15307 pertains only to income, then it has no application in this case. But if it extends to principal, many of the same questions raised above arise. Section 15307, like section 15301(b), does not explicitly refer to section 15306.5 or any of the other exceptions listed in section 15301(a), and it could be read literally to give a creditor access to the entirety of a beneficiary’s trust interest so long as none of it is deemed necessary for his education and support. What purpose, then, would sections 15301(b) and 15306.5 serve? Section 15307 would be duplicative of a creditor’s right to petition for distributions of principal under section 15301(b). And, depending on the meaning of section 15306.5 (which remains unclear), section 15307 could directly conflict with—and create an end-run around—the 25 percent cap set forth in section 15306.5. Is the Probate Code meant to function as a menu from which creditors may select the sections they want to invoke in order to reach the maximum amount of a beneficiary’s interest in a spendthrift trust? And, if so, what would remain of the protections afforded to the beneficiary?

The answers to these questions have significant ramifications, not just for the immediate parties, but for the administration of all spendthrift trusts in California. As it currently stands, the Probate Code is subject to two vastly different readings: one giving creditors unfettered access to a beneficiary’s interest in the trust, and another restricting creditors’ access to 25 percent. We are reluctant to decide which reading prevails without the authoritative guidance of the California Supreme Court. We therefore ask the Court to

exercise its discretion and decide the appropriate degree to which creditors may access spendthrift trusts.

## IV.    Administrative Information

The names and addresses of counsel for the parties are as follows:

*Counsel for Appellant Todd A. Frealy:*

Jesse Sequoia Finlayson
Matthew E. Lilly
Finlayson Toffer Roosevelt & Lilly LLP
15615 Alton Parkway
Irvine, CA 92618

*Counsel for Appellees Rick H. Reynolds, John M. Carmack and John Morris:*

David Meadows, Attorney
Law Offices of David W. Meadows
1801 Century Park East
Los Angeles, CA 90067

Joseph A. Eisenberg
Thomas M. Geher
Jeffer Mangels Butler & Marmaro LLP
1900 Avenue of the Stars
Los Angeles, CA 90067

Frealy should be deemed the petitioner if the California Supreme Court accepts this request.  Cal. R. Ct. 8.548(b)(1).

The Clerk of this court shall submit copies of all relevant briefs and an original and ten copies of this Order to the California Supreme Court with a certificate of service on the parties. *See* Cal. R. Ct. 8.548(c), (d).  All further proceedings before us are stayed pending receipt of the California Supreme Court's decision.  The parties shall notify the Clerk of this court within one week after the California Supreme Court accepts or declines this request, and again within one week after it renders its decision.

**IT IS SO ORDERED.**